UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Case No. 16-CR-20437

    Plaintiff,        Hon. Robert H. Cleland

-v-

MUHAMMAD QAZI, D-2,

    Defendant.

| | |
|---|---|
| Jacob Foster, U.S. DOJ | Kimberly W. Stout (P38588) |
| 211 W. Fort Street, Suite 2001 | 370 E. Maple Rd., Third Floor |
| Detroit, Michigan 48226 | Birmingham, Michigan 48009 |
| *Attorneys for the United States* | (248) 258-3181 |
| | *Attorney for Muhammad Qazi* |

## **EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Defendant Muhammad Qazi ("Qazi"), through counsel, Kimberly W. Stout, moves this Court for an Order reducing his sentence and releasing him from prison under the compassionate release provisions of 18 U.S.C. § 3582, as modified by the First Step Act. In the alternative, Qazi requests language from this Court opining on whether the Bureau of Prisons should consider release.

Pursuant to Local Rule 7.1, the undersigned sought concurrence on this motion by telephone call, which was not returned.

Qazi requests that this Honorable Court grant his motion for compassionate release.

Respectfully Submitted,

KIMBERLY W. STOUT, P.C.

/s/ Kimberly W. Stout
Kimberly W. Stout (P38588)
*Attorney for Defendant*
370 E. Maple Rd., Third Floor
Birmingham, MI 48009

Dated: 4/23/20

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

            Plaintiff,

-v-

MUHAMMAD QAZI, D-2,

        Defendant.

Case No. 16-CR-20437
Hon. Robert H. Cleland

| | |
|---|---|
| Jacob Foster, U,S, DOJ | Kimberly W. Stout (P38588) |
| Assistant United States Attorney | 370 E. Maple Rd., Third Floor |
| 211 W. Fort Street, Suite 2001 | Birmingham, Michigan 48009 |
| Detroit, Michigan 48226 | (248) 258-3181 |
| *Attorneys for the United States* | *Attorney for Muhammad Qazi* |

**BRIEF IN SUPPORT OF EMERGENCY MOTION FOR**
**COMPASSIONATE RELEASE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................iii

STATEMENT OF ISSUES................................................................vi

I.    ARGUMENT.........................................................................1

      A.  THE GLOBAL HEALTH CRISIS CAUSED BY THE RAPID
          SPREAD OF COVID-19 WARRANTS A REDUCTION OF QAZI'S
          SENTENCE......................................................................1

          1.  This Court Possesses The Authority To Excuse The
              Administrative Exhaustion Requirement In 18 U.S.C. §
              3582(c)(1)(A)...........................................................2

          2.  The COVID-19 Outbreak Presents A Compelling And
              Extraordinary Circumstance Which Necessitates Compassionate
              Release.................................................................7

                  a.  *Prisons Are "Tinderboxes For Infectious Disease"*..........8

                  b.  *Qazi's Underlying Health Conditions*.......................11

          3.  A Sentence Reduction Is Consistent With The Sentencing
              Commission's Policy Statements And The Factors Outlined In 18
              U.S.C.S. § 3553(a)....................................................14

                  a.  *Policy Statements*............................................14

                  b.  *§ 3553(a) Factors*............................................15

      B.  ALTERNATIVELY, THIS COURT SHOULD PERMIT QAZI TO
          COMPLETE HIS SENTENCE IN HOME CONFINEMENT OR
          STRONGLY URGE THE BOP TO GRANT COMPASSIONATE
          RELEASE.....................................................................18

      C.  EIGHTH AMENDMENT AND DUE PROCESS
          CONSIDERATIONS.........................................................20

**II.    CONCLUSION**………………………………………………………………21

## TABLE OF AUTHORITIES

### Cases

*In re Manrique,* No. 19-mj-71055-MAG-1 (TSH), 2020 U.S. Dist. LEXIS 50017 (N.D. Cal. Mar. 19, 2020)..............................................................................................9

*United States v. Ben-Yhwh*, No. 15-00830 LEK, 2020 U.S. Dist. LEXIS 65677 (D. Haw. Apr. 13, 2020)..................................................................................................3

*United States v. Butler* No. 18 Cr. 834 (PAE), Dkt. 461, 2020 U.S. Dist. LEXIS 61021 (S.D.N.Y. Apr. 7, 2020)..................................................................................17

*United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62, 2020 U.S. Dist. LEXIS 58238 (S.D.N.Y. April 2, 2020)............................................................................17

*United States v. Doshi*, No. 13-cr-20349, 2020 U.S. Dist. LEXIS 55572 (E.D. Mich. Mar. 31, 2020) ...........................................................................................17

*United States v. Fuller*, No. CR17-0324JLR, 2020 U.S. Dist. LEXIS 64520 (W.D. Wash. Apr. 13, 2020)..................................................................................................3

*United States v. Haney*, No. 19-cr-541 (JSR), 2020 U.S. Dist. LEXIS 63971 (S.D.N.Y. Apr. 13, 2020)..................................................................................................4

*United States v. Martin,* No. 18-CR-834-7 (PAE), 2020 U.S. Dist. LEXIS 63451 (S.D.N.Y. Apr. 10, 2020)...............................................................................................14

*United States v. McCarthy*, No. 17 Cr. 230 (JCH), 2020 U.S. Dist. LEXIS 61759, 2020 WL 1698732 (D. Conn. Apr. 8, 2020)..........................................................3

*United States v. Nkanga*, No. 18-CR-713, 2020 U.S. Dist. LEXIS 56188 (S.D.N.Y. Mar. 31, 2020)...............................................................................................8

*United States v. Paciullo*, No. 15-CR-834 (KMW), 2020 U.S. Dist. LEXIS 65198 (S.D.N.Y. Apr. 14, 2020).............................................................................................13

*United States v. Petrossi*, No. 1:17-CR-192, 2020 U.S. Dist. LEXIS 64972 (M.D. Pa. Apr. 14, 2020)................................................................................................13

*United States v. Powell*, No. 94 Cr. 316 (ESH), 2020 U.S. Dist. LEXIS 62546 (D.D.C. Mar. 28, 2020)………………………………………..……3

*United States v. Rabadi*, No. 13-CR-353 (KMK), 2020 U.S. Dist. LEXIS 65199 (S.D.N.Y. Apr. 13, 2020)………………………..……………………………3

*United States v. Roberts*, No. 18 Cr. 528-5 (JMF), 2020 U.S. Dist. LEXIS 62318, 2020 WL 1700032 (S.D.N.Y. Apr. 8, 2020)………….……………………………3

*United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 U.S. Dist. LEXIS 58718 (E.D. Pa. Apr. 1, 2020)……………………………...……………8

*United States v. Russo*, No. 16-cr-441 (LJL), 2020 U.S. Dist. LEXIS 65390 (S.D.N.Y. Apr. 14, 2020)…………………………………………….………4

*United States v. Sawicz,* No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418 (E.D.N.Y. Apr. 10, 2020)………………………………………...…………3

*United States v. Skelos*, No. 15-CR-317 (KMW), 2020 U.S. Dist. LEXIS 64639 (S.D.N.Y. Apr. 12, 2020)………………………………………………...4, 8

*United States v. Smith*, 2020 U.S. Dist. LEXIS 64371 (S.D.N.Y. Apr. 13, 2020)…...3

*United States v. Vo Duong Tran*, No. CR 08-00197-DOC, 2020 U.S. Dist. LEXIS 65414 (C.D. Cal. Apr. 10, 2020)………………………………………….……11

*United States v. Washington*, No. 5: 13-020-DCR, 2020 U.S. Dist. LEXIS 65186 (E.D. Ky. Apr. 14, 2020)………………………………………………….………3

*United States v. Wen*, No. 6:17-CR-06173 EAW, 2020 U.S. Dist. LEXIS 64395 (W.D.N.Y. Apr. 13, 2020)………………………………………………………3

*United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 U.S. Dist. LEXIS 59588, 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020)……………………………...………3

## **Statutes and Rules**

U.S.S.G. § 1B1.13(1)(A)……………………………………………………17

18 U.S.C. § 3553(a)……………………………………………..……………*passim*

## STATEMENT OF ISSUES

1.      Should this Court waive the exhaustion requirement contained in Section 3582, requiring an inmate to petition the BOP for compassionate release prior to requesting the same from the courts, given the rapid speed at which COVID-19 can inflict devastating health consequences?

Defendant answers, yes.

2.      Has Qazi demonstrated a compelling and extraordinary circumstance warranting compassionate relief in light of his age and underlying health conditions, which heighten his risk of developing life-threating conditions should he contract COVID-19?

Defendant answers, yes.

3.      Has Qazi demonstrated that a reduction in sentence would be consistent with the Section 3553(a) factors and policy statements issued by the Sentencing Commission, which require the Court to consider Qazi's danger to society and other elements, when Qazi has taken steps to effect a positive change while incarcerated?

Defendant answers, yes.

# I.    ARGUMENT

## A.    THE GLOBAL HEALTH CRISIS CAUSED BY THE RAPID SPREAD OF COVID-19 WARRANTES A REDUCTION OF QAZI'S SENTENCE

Qazi pled guilty to Count One, Conspiracy to Commit Healthcare Fraud, contrary to 18 USC 1349. The Rule 11 Plea Agreement provided for a guideline range of 87 -108 months based upon an offense level of 29 and a criminal history category I.  Pursuant to USSG Rule 5K1.1, the government recommended a 45% reduction from the bottom of the guideline range, resulting in a 48-month sentence request. On August 31, 2019, Mr. Qazi was sentenced to 42 months for Health Care Fraud. Mr. Qazi surrendered to the Bureau of Prisons on October 18, 2018. He had already served 13 months while detained. Thus, he has served approximately 31 months of his 42-month sentence. Mr. Qazi is currently housed at Mashannon Valley Correctional Institute with an anticipated release date of September 20, 2020. He is 49 years old.

Qazi humbly moves this Court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018 ("FSA"). Prior to the passage of the FSA, only the Director of the Bureau of Prisons ("BOP") could move the court for compassionate release of a defendant. *United States v. Petrossi*, No. 1:17-CR-192, 2020 U.S. Dist. LEXIS 64972, at *8 (M.D. Pa. Apr. 14, 2020). However, the FSA now expressly permits a defendant to directly move the

court under § 3582(c)(1)(A)(i). Under normal circumstances, a defendant may only

seek such relief from a court if either (1) "the defendant has exhausted all

administrative rights to appeal the BOP's failure to bring a motion on his behalf" or

(2) "thirty days have elapsed since requesting that the warden of his facility initiate

such action." *United States v. Paciullo*, No. 15-CR-834 (KMW), 2020 U.S. Dist.

LEXIS 65198, at *4 (S.D.N.Y. Apr. 14, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

18 U.S.C. § 3582(c)(1)(A) states in pertinent part that:

> the court . . . may reduce the term of imprisonment . . . after considering
> the factors set forth in section 3553(a) to the extent they are applicable
> if it finds that . . . such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

Mr. Qazi has attempted to exhaust his remedies by submitting a request for

home detention in December of 2019. This request was denied **Exhibit A.** Although

it could be said he has not yet fulfilled the exhaustion requirement, he pleads with

this Court to waive such requirements in light of the time-sensitive, serious dangers

caused by the COVID-19 crisis.

**1.    This Court Possesses the Authority to Excuse the
        Administrative Exhaustion Requirement in 18 U.S.C. §
        3582(c)(1)(A).**

As previously stated, Mr. Qazi has attempted to exhaust his remedies by

submitting a request for home detention in December of 2019. This request was

denied.

Qazi pleads with this Court to join many of its sister courts who have waived the exhaustion requirement, concluding that the "administrative process [outlined in Section 3588] is incapable of granting relief" to defendants in light of the dangerous threat posed by Covid-19. *United States v. Ben-Yhwh*, No. 15-00830 LEK, 2020 U.S. Dist. LEXIS 65677, at *11-12 (D. Haw. Apr. 13, 2020).

This Court should decide this motion now, regardless of exhaustion. Indeed, many district courts have concluded that the exhaustion requirement contained in Section 3582(c)(1)(A) functions as a claims processing rule, not as a jurisdictional bar.[1]  *United States v. Wen*, No. 6:17-CR-06173 EAW, 2020 U.S. Dist. LEXIS 64395, at *13-14 (W.D.N.Y. Apr. 13, 2020).[2]

---

[1] *See generally United States v. Smith*, 2020 U.S. Dist. LEXIS 64371, at *5-6 (S.D.N.Y. Apr. 13, 2020); *United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418 (E.D.N.Y. Apr. 10, 2020); *United States v. McCarthy*, No. 17 Cr. 230 (JCH), 2020 U.S. Dist. LEXIS 61759, at *4 (D. Conn. Apr. 8, 2020); *United States v. Zukerman*, 2020 U.S. Dist. LEXIS 59588, at *4 (S.D.N.Y. Apr. 3, 2020); *United States v. Powell*, No. 94 Cr. 316 (ESH), 2020 U.S. Dist. LEXIS 62546 (D.D.C. Mar. 28, 2020).

[2] *See,* however, *cf,* where courts hold that exhaustion is jurisdictional. *United States v. Fuller*, No. CR17-0324JLR, 2020 U.S. Dist. LEXIS 64520, at *5 (W.D. Wash. Apr. 13, 2020); *Petrossi*, 2020 U.S. Dist. LEXIS 64972, at *10 (M.D. Pa. Apr. 14, 2020); *United States v. Washington*, No. 5: 13-020-DCR, 2020 U.S. Dist. LEXIS 65186, at *2 (E.D. Ky. Apr. 14, 2020); *United States v. Roberts*, No. 18 Cr. 528-5 (JMF), 2020 U.S. Dist. LEXIS 62318, at *2 (S.D.N.Y. Apr. 8, 2020); *United States v. Rabadi*, No. 13-CR-353 (KMK), 2020 U.S. Dist. LEXIS 65199, at *7 (S.D.N.Y. Apr. 13, 2020) (collecting cases).

The United States Supreme Court employs a bright line test to discern jurisdictional rules from those which are non-jurisdictional in character – labeling a statutory rule as jurisdictional only if "Congress has clearly stated that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Finding Section 3582(c)(1)(A) devoid of such an explicit statement from Congress, many courts have instead described the exhaustion requirement as a claims processing rule. As a claims processing rule, "the exhaustion requirement in § 3582(c)(1)(A) merely controls who – the BOP or defendant – may move for compassionate release and when such a motion may be made. It simply delineates the process for a party to obtain judicial review, not referring to the adjudicatory capacity of courts." *United States v. Haney*, No. 19-cr-541 (JSR), 2020 U.S. Dist. LEXIS 63971, at *5-6 (S.D.N.Y. Apr. 13, 2020).

However, just because Section 3582(c)(1)(A) is a claims processing rule, rather than a jurisdictional one, it does not give courts the license to ignore the exhaustion requirement contained therein. *United States v. Russo*, No. 16-cr-441 (LJL), 2020 U.S. Dist. LEXIS 65390, at *11 (S.D.N.Y. Apr. 14, 2020). Accordingly, courts have proceeded carefully in analyzing whether a waiver of the exhaustion requirement conflicts with the congressional intent of the statute. Courts have persuasively reasoned that the dual option given to defendants in Section 3582(c)(1)(A), either exhausting or waiting thirty days, is not meant to "protect

administrative agency authority" – because a defendant can get relief from a court before the BOP has even issued a final decision. *Haney*, 2020 U.S. Dist. Lexis 63971, at 8-9. Therefore, the reduction of the wait period to a mere 30 days unquestionably reflects "congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released." *Id.*

Now more than ever, defendants need an avenue that provides "meaningful and prompt judicial determination" when their life is in jeopardy. In *United States v. Russo*, a defendant incarcerated in a BOP facility petitioned the court for compassionate release because he had serious underlying medical issues that put him at high risk for contracting COVID-19. 2020 U.S. Dist. LEXIS 65390, at *1. The court deferred ruling on Mr. Russo's motion because the BOP had yet to decide his request for a sentence reduction, but after waiting a period of time, the court decided it had to intervene. *Id.* As the court was completing its opinion – which was set to hold that the court was empowered to waive the administrative exhaustion requirement and that Mr. Russo met the compassionate release criteria – it learned that Mr. Russo had contracted COVID-19. *Id.* at 21. The court was then forced to deny Mr. Russo's motion on the grounds that he posed a high risk to others if moved. *Id.* **In doing so the court noted that "Mr. Russo's story confirms the heart-wrenching reality that every day matters in these cases."** *Id* (emphasis added).

In addition to demonstrating just how dangerous the passage of time is for high risk individuals inside of federal correctional facilities, *Russo* also demonstrates that although the BOP may have better access to information than the courts, the entity lacks the resources or ability to give meaningful consideration to the "individual circumstances of thousands of compassionate release applicants" that are now flooding the desks of Wardens across the country. *Paciullo*, 2020 U.S. Dist. LEXIS 65198, at 6-7. Even with stern prodding from the district court and government, the BOP in *Russo* still failed to address the petition. Forcing individuals who are at high risk for contracting COVID-19 to wait thirty days, in a breeding ground of infection, just for the BOP to not even address their request is insensitive of the global pandemic ripping across the county and subjects defendants to unnecessary, potentially fatal, risk.

For a COVID-19 patient, a thirty-day exhaustion requirement could be a death sentence. The Court must look no further than the steps of its own courthouse to see the devastating and ravaging impact that COVID-19 can inflict on a city or state in less than 30 days. Although Michigan did not report a confirmed case of COVID-19 until March 10, in the ensuing weeks the state was placed on lock down and Michiganders watched from their homes in horror as infection rates in the state continued to grow astronomically.[3] A little over a month after the first confirmed

---

[3] Stay Home, Stay Safe, Save Lives https://www.michigan.gov/coronavirus/

case, Michigan has seen thousands of its citizens succumb to COVID-19 and has remained one of the states with the highest number of confirmed cases in the country ever since.[4] The state of Michigan alone is a prime example of the wicked speed in which COVID-19 can engulf and overwhelm a community.

Qazi, therefore, urges this Court to join many other federal district courts in waiving the thirty-day administrative exhaustion requirement in Section 3582(c)(1)(A) considering the serious dangers the requirement unnecessarily inflicts on high risk individuals incarcerated by the BOP. Waiving the exhaustion requirement will simply advance this Court's consideration of Qazi's motion for compassionate release.

### 2. The Covid-19 Outbreak Presents A Compelling and Extraordinary Circumstance Which Necessitates Compassionate Release.

We are living in extraordinary times as the COVID-19 pandemic sweeps the world. At the time of the writing of this motion, there were close to 2 million cases

---

0,9753,7- 406-98159-522649--,00.html

[4] Elena Renken, *Tracking the Pandemic: How Quickly is the Coronavirus Spreading State by State?* https://www.npr.org/sections/healthshots/2020/03/16/816707182/map-tracking-the-spread-of-the-coronavirus-in-the-u-s

worldwide and over 130,000 deaths.[5] In the United States alone, there are about 700,000 cases with over 35,000 deaths and counting.[6]

### a. *Prisons are "Tinder Boxes for Infectious Disease"*[7]

Inmates in the BOP do not have the ability to practice any of the hygienic and social distancing techniques that the CDC recommends to prevent rapid transmission of COVID-19. Incarcerated individuals have limited or no access to products to sanitize their own environment, and cannot practice social distancing or even control their exposure to large groups. Accordingly, "jail and prisons are powder kegs for infection" and "[r]ealistically the best—perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible." *United States v. Skelos*, No. 15-CR-317 (KMW), 2020 U.S. Dist. LEXIS 64639, at *4 (S.D.N.Y. Apr. 12, 2020) (quoting *United States v. Nkanga*, No. 18-CR-713, 2020 U.S. Dist. LEXIS 56188, at *1 (S.D.N.Y. Mar. 31, 2020)).

---

[5] World Health Organization, Coronavirus Disease 2019 (COVID-19) Situation Report – 87, https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200416-sitrep-87-covid-19.pdf?sfvrsn=9523115a_2 (last visited April 17, 2020).

[6] Coronavirus Disease 2019 (COVID-19), Cases in the US https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

[9] *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 U.S. Dist. LEXIS 58718, at *2 (E.D. Pa. Apr. 1, 2020).

To slow the spread of COVID-19, the BOP has instructed its facilities to implement new practices like screening inmates for symptoms. But at least one court has highlighted the inherently problematic nature of such instruction – noting that "the [BOP] management plan itself acknowledges [that] symptoms of COVID-19 can begin to appear 2-14 after exposure, so screening people based on observable symptoms is just a game of catch up. . . We don't who's infected." *In re Manrique*, No. 19-mj-71055-MAG-1 (TSH), 2020 U.S. Dist. LEXIS 50017, at *1 (N.D. Cal. Mar. 19, 2020). In fact, Attorney General William Barr even acknowledged the shortcomings of the BOP's preventative measures, stating that "[w]hile BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting our inmates, those precautions, like any precautions, have not been perfectly successful at all institutions."[8]

As an additional COVID-19 measure, on April 1 the BOP mandated a facility wide lockdown which has recently been extended until May 18.[9] On April 1, only 57 inmates and 37 BOP staff members had contracted COVID-19.[10] Despite over a

---

[8] *See supra*, note 1.

[9] Federal Inmates in Sheridan Are Finding Coronavirus Lockdown 'Overwhelming,' Public Defender Says, https://www.oregonlive.com/coronavirus /2020/04/ors-federal-public-defender-lockdown-at-federal-prison-to-avoid-spread-of-coronavirus-is-becoming-overwhelming-for-some-inmates.html

[10] *See* Congressional Research Service, *Federal Prisoners and COVID-19: Background and Authorities to Grant Release* at 1. https://crsreports.congress.gov/

month of lockdown, the presence of COVID-19 in prisons has continued to grow at an alarming rate, with the BOP now reporting that 473 inmates and 279 staff members within its facilities have tested positive and 18 inmates have died.[11]

A recent filing by the union representing BOP guards across the country demonstrates just how likely this possibility is. In an Imminent Danger complaint filed with the Occupational Safety and Health Administration, BOP guards alleged that the agency has

> authorized movement of infected inmates, inmates suspected of being infected, inmates who have been in close contact or proximity to infected inmates, areas of the Country that do not have any rate of infections, or to Institutions that otherwise have not shown signs of any introduction of the virus, thus introducing the virus into an uninfected area.

**Exhibit B**, OSHA Complaint.

While prison staff, commendably, continue to report to work they do so with the potential to spread the lethal virus unwittingly. Inmates like Qazi, although in lock-down, still touch phones, computers, and showers that other inmates are using. However, inmates are not provided soap and can only purchase sanitizing products in commissary. Reports have also noted that a lock-down on its own may not prevent

---

product/pdf/R/R46297

[11] COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Apr. 17, 2020).

the spread of COVID-19 even if inmates are housed in individual cells – because they "typically share the same ventilation system with prisoners in other cells."[12] Even with the BOP's precautionary measures, the bottom line is that "individuals housed within our prison systems nonetheless remain particularly vulnerable to infection." *United States v. Vo Duong Tran*, No. CR 08-00197-DOC, 2020 U.S. Dist. LEXIS 65414, at *5-6 (C.D. Cal. Apr. 10, 2020). *See also United States v. Martin,* No. 18-CR-834-7 (PAE), 2020 U.S. Dist. LEXIS 63451, at *7 (S.D.N.Y. Apr. 10, 2020) ("The crowded nature of federal detention centers . . . present an outsize risk that the COVID-19 contagion, once it gains entry, will spread.").

### b. *Qazi's Underlying Health Conditions*

`     Mr. Qazi is 49 years old and suffers from Type 2 Diabetes, Hyperlipidemia, Chronic Viral Hepatitis B, and Sleep Apnea, all of which were set forth at sentencing and in Mr. Qazi's Presentence Report.

Dr. Chris Beyrer, a leading epidemiologist from John Hopkins University, has stated under oath regarding Covic-19 that the fatality rate "varies significantly with advancing age, rising after age 50, and above 5% (1 in 20 cases) for those with pre-existing conditions including…diabetes…" *See* Declaration of Chris Beyrer, M.D. Ph.D., in support of Persons in Detention and Detention Staff, Covid-19.

---

[12] *See* Congressional Research Service, *supra* note 13, at 3.

This Defendant has no other criminal record and is non-violent. A reduction of Defendant's sentence would not shorten the length of Defendant's sentence but allow him to serve it in a medically safer environment, at home, on a tether.

Defendant urges this Court to reduce the sentence of Defendant Qazi and release him from custody based upon a compassionate release pursuant to 18 U.S.C. 3582, as modified by the First Step Act. This would also protect Mr. Qazi's 8th Amendment rights and rights to due process.

Attorney General William Barr issued a directive to the Bureau of Prisons (BOP) expanding consideration for home release for many inmates. *See* Coronavirus Aid Relief and Economic Security Act (CARES Act) enacted March 27, 2020.

Coincidentally, prior to the COVID-19 outbreak, in December of 2019, pursuant to 18 U.S.C. 3582( c)(1)(A), Congress invested this Court with the power and duty to consider reducing a limited number of its previous sentences where extraordinary circumstances, not foreseen at the time of sentencing, make such reconsiderations appropriate. A defendant may file directly with the Court a motion seeking reduction of his sentence for extraordinary and compelling reasons, if, first, the defendant has exhausted her administrative remedies, ***or*** second, there has been a lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. *See* 18 U.S.C. 3582( c)(1)(A)(i). Thus, this Court is no longer divested of its jurisdiction after sentencing the defendant. It may permit release if compelling

and extraordinary circumstances exist. Qazi did in fact, make his request in December 2019 and it was denied as previously set forth

Accordingly, federal district courts have begun to grant compassionate release motions based on a movant's heightened risk caused by hypertension. In *United States v. Sawicz*, for example, the court found that the defendant had sufficiently demonstrated compelling and extraordinary circumstances warranting compassionate release based solely on the risk his hypertension posed. 2020 U.S. Dist. LEXIS 64418 (E.D.N.Y. Apr. 10, 2020). Similarly, in *United States v. Rodriguez*, the court reduced a defendant's sentence who suffered from, among other things, hypertension. 2020 U.S. Dist. LEXIS 58718, at (E.D. Pa. Apr. 1, 2020). In granting the motion, the court noted that "the fatality rate for people with hypertension [and infected with COVID-19] was 8.4%." *Id.* The court also rejected the government's argument that Mr. Rodriguez's conditions did not warrant release because they were not "unusual" and he was classified in the BOP's lowest medical care level. Instead the court stated "[i]n the absence of a deadly pandemic that is deadlier to those with Mr. Rodriguez's underlying conditions, these conditions would not constitute 'extraordinary and compelling reasons.' It is the confluence of COVID-19 and Mr. Rodriguez's health conditions that makes this circumstance extraordinary and compelling." *Id. at* 20.

13

Therefore, Qazi, urges this Court to find that the COVID-19 crisis has transformed his health issues into a compelling and extraordinary circumstance warranting a sentence reduction. *See also Ben-Yhwh,* 2020 U.S. Dist. LEXIS 65677, at *11-12 (D. Haw. Apr. 13, 2020) (granting a defendants compassionate release despite the fact that the BOP facility he was in had yet to report a confirmed case of COVID-19).

### 3.   A Sentence Reduction Is Also Consistent With the Sentencing Commission's Policy Statements and the Factors Outlined in 18 U.S.C.S. § 3553(a).

In addition to finding a compelling and extraordinary circumstance warranting compassionate relief, a court considering a defendant's motion under Section 3582(c)(1)(A) must decide whether a sentence reduction would "be consistent with the applicable policy statements issued by the Sentencing Commission" and supported by the "factors set forth in section 3553(a)."  § 3582(c)(1)(A).

### a.   *Policy Statements*

Section 3582(c)(1)(A) is accompanied by a policy statement and commentary promulgated by the Sentencing Commission. The relevant section states that a court may reduce a sentence for "extraordinary and compelling reasons," including situations where an individual is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide

self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A).

As already stated, the fact that Qazi has diabetes and other health issues and over the age of 49 has increased his risk for developing life-threatening conditions should he contract COVID-19. If infected with a severe or debilitating case of COVID-19, Qazi will certainly have a difficult time caring for himself. Accordingly, the defendant urges this Court to find that "the risk of serious illness or death he faces in prison" qualifies as an extraordinary or compelling reason, favoring his early release. *Sawicz*, 2020 U.S. Dist. LEXIS 64418 at 7.

**b.    *§ 3553(a) Factors***

Similarly, the application of the § 3553(a) factors mitigates towards Flenory's compassionate release. In considering what is "sufficient but not greater than necessary, to comply with the purposes of [sentencing]", § 3553(a) instructs a court to consider the following:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant; and

15

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** [the kinds of sentence and sentencing range provided for in the USSG]

**(5)** any pertinent [Sentencing Commission policy statement]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense

*Sawicz*, 2020 U.S. Dist. LEXIS 64418 at 7, 8 (summarizing § 3553(a)).

First, Qazi acknowledges the serious nature of the crimes he committed; he did plead guilty and was fully cooperative in this matter. His cooperation began as soon as he was indicted. He has no history of criminal activity and has been a model prisoner. He has also served 31 months of his sentence. And, as this Court will recall, his daughter is ill.

Imaan Uroos, Defendant's daughter, is 16 years old. She has been diagnosed with Arterial Venous Malformation (AVM), a rare and serious disease. Dr. Joseph John Gemmete of the University of Michigan Health System, writes as follows:

Imaan Uroos has been a patient at the University of Michigan Hospital since 2011 for the diagnosis of an arteriovenous malformation (Q27.3) involving the mandible. Through our department, she has undergone embolizations to treatment [sic] the malformation which left untreated

-16

could lead to life treating [sic] bleeding. These treatments require parental support and recommendation for no travel until the lesion is determined to be stable. In addition, as this lesion involves the mandible this is an interdisciplinary managed diagnosis that is being followed by our colleagues in Oral Maxillofacial surgery, here at the University of Michigan.

*See* Sentencing Memorandum.

In considering Qazi's motion for compassionate release, this Court should also consider "the kinds of sentences and sentencing range established for the applicable category of offense committed by the applicable category of offense set forth in the guidelines."

Qazi has completed most of his sentence with a release date pending in September of 2020. Qazi is not trying to manipulate the judicial system in these unique times by asking to be released months into his sentence. *See e.g. United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62, 2020 U.S. Dist. LEXIS 58238 (S.D.N.Y. April 2, 2020) (denying compassionate release of a 72-year old defendant where he had only served two months of a 33 month sentence); *United States v. Butler* No. 18 Cr. 834 (PAE), Dkt. 461, 2020 U.S. Dist. LEXIS 61021 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release for a defendant with asthma because he had only served 15 months out of a 60 month sentence). Instead, Qazi is asking that his sentence, which he has already served the majority of, be reduced in light of his increased vulnerability to catastrophic health consequences should he contract COVID-19. Such a measure would still reflect the seriousness of his offense, but

would also take into account the devastating consequences that COVID-19 could inflict on Qazi should he have to serve the rest of his sentence.

**B.  ALTERNATIVELY, THIS COURT SHOULD PERMIT QAZI TO COMPLETE HIS SENTENCE IN HOME CONFINEMENT OR STRONGLY URGE THE BOP TO GRANT COMPASSIONATE RELEASE**

Should this Court decline to reduce Qazi's sentence to time serve, Qazi humbly requests this Court allow him to complete the months remaining on his sentence via home confinement.  Although some courts have concluded that they are without power to order home detention,[13] others have considered and granted such requests. *See United States v. Atwi*, No. 18-20607, 2020 U.S. Dist. LEXIS 68282, at *15 (E.D. Mich. Apr. 20, 2020) (granting compassionate release and ordering that the "remainder of [a defendant's] sentence will be reduced to home incarceration"); *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 U.S. Dist. LEXIS 67729, at *14 (D. Conn. Apr. 17, 2020) (permitting a defendant to "be on home incarceration until his original BOP release date"); *United States v. Burrill*, No. 17-cr-00491-RS-1, 2020 U.S. Dist. LEXIS 65774, at *10-11 (N.D. Cal. Apr. 10, 2020)

---

[29] *See e.g. United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 U.S. Dist. LEXIS 66894, at *12-13 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision"); *United States v. McCann*, No. 5:13-52, 2020 U.S. Dist. LEXIS 67853, at *7 (E.D. Ky. Apr. 17, 2020) (same).

(ordering that the "the remaining portion of the original term of imprisonment (as calculated by the BOP), shall be served as supervised release with the special condition that Burrill shall be subject to home confinement").[14]

If permitted to serve the remaining sentence in home confinement, Qazi would return home to his wife and three children. As a civil engineer, he would be able to obtain work if permitted.

In the event that this Court find itself divested of authority to hear Qazi's motion for compassionate relief, due to a failure to exhaust administrative remedies, Qazi asks this Court to advise the BOP to grant his release. Although such determinations are within the BOP's own purview, "the BOP routinely relies on judicial recommendations that express the district judge's determination of how a defendant should serve his time." *United States v. Doshi*, No. 13-cr-20349, 2020 U.S. Dist. LEXIS 55572, at *1-2 (E.D. Mich. Mar. 31, 2020).

---

[30] Other courts have taken a third approach, finding that a defendant's request to serve the remainder of his sentence in home confinement was a habeas petition. *United States v. Serfass*, No. 3:15-39, 2020 U.S. Dist. LEXIS 66071, at *8-9 (M.D. Pa. Apr. 15, 2020) (concluding that a defendant's motion requesting home confinement "should be construed as a §2241 habeas petition since she seeks relief affecting how her sentence is executed, i.e., serving her sentence in home confinement as opposed to confinement in prison to which she was sentenced, and not a reduction or release from her sentence (i.e. a compassionate release)"). *United States v. Brady*, No. 3:17-60, 2020 U.S. Dist. LEXIS 64973, at *5 (M.D. Pa. Apr. 14, 2020) (concluding the same) ("The defendant has not asked to be released from her sentence, rather she is asking that her sentence be executed in a different manner, i.e. home confinement.").

The government has been opposing compassionate release motions across the country and the BOP is using the defense of an "impenetrable fortress." The BOP's position flies in the face of every health expert in the country, and world for that matter. Clearly, we all realize that the BOP cannot control the population in a humane setting such that the elderly, non-violent prisoners cannot contract COVID-19. Even the President of the United States discussed openly that he is considering releasing all federal prisoners who are elderly and non-violent, presumably based on recommendations received by his Coronavirus Task Force. *See* www.businessinsider.com/trump-consider-coronavirus-executive-orderfederal-prisons2020-3. Staff comes in and out of prisons daily; a fortress is an impossibility.

**C. Eighth Amendment and Due Process Considerations**

*Heilling v McKinny,* 509 U.S. 25 (1993), and subsequent cases express that the Bureau of Prisons must take sufficient protective measures to prevent contraction *of the COVID-19 virus. In Helling, a plaintiff alleged that he was in a cell with an* inmate who smoke continuously. The exposure to the smoke constituted harm and an Eight Amendment violation. Though *Helling* directly addressed an inmate's exposure to secondhand smoke, it tacitly acknowledged other situations in which environmental factors can pose an unreasonable risk to an inmate's health. *See*

*Wallis v Baldwin,* 70 F.3d 1074 (9th Cir. 1995)(asbestos poses a serious risk to human health).

Unreasonable risk of COVID-19 contraction will, in itself, constitute an Eighth Amendment violation. The protections for inmates are insufficient and therefore raise significant Eighth Amendment violation issues.

Here, Defendant is an at-risk individual with pre-existing health issues, and sufficient precautions are impossible to protect him from COVID-19.

Moreover, due process requires the prevention of disease spreading throughout an institution. *See United States v Scarpa,* 815 F.Supp. 88 (E.D.N.Y. 1993)(pretrial defendant with AIDS facing murder charges released o bail because of unacceptably high rist of infection or death at the institution). Here, Defendant cannot be protected.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant requests that this Honorable Court enter an order reducing his sentence.

<div style="margin-left:50%">

Respectfully Submitted,
<u>/s/Kimberly W. Stout</u>
KIMBERLY W. STOUT (P38588)
Attorney for Defendant
370 E. Maple Rd., 3rd FL
Birmingham, MI  48009
(248) 258-3181

</div>

Dated: April 23, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

EDITHA MANZANO,

      Defendant.

Case No. 16-cr-20593

Hon. Gershwin A. Drain

_____/

## CERTIFICATE OF SERVICE

I certify that on April 23, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Jacob Foster
Assistant, Department of Justice

/s/Kimberly W. Stout____
Kimberly W. Stout (P38588)

Date:

22